[No. 33351. *En Banc.* October 4, 1956.]

MERLE E. SCOTT, *Appellant,* v. GUY L. HOLCOMB, *Respondent.*[1]

[1]Reported in 301 P. (2d) 1068.

*William R. Garland, Marion Garland, Jr.,* and *John A. Bishop,* for appellant.

*Oluf Johnsen,* for respondent.

ROSELLINI, J.—The parties to this action were married in 1923 and separated in 1934, when the eldest of their five children was ten years of age and the youngest, nineteen months. The record does not disclose through whose fault the separation was brought about, but it appears that the respondent left the home of the parties in New York, taking with him the four older children and a woman who later became his wife. The four children resided with the respondent and were supported by him until they reached majority or became self-supporting. In 1943, the family came to Washington, where the respondent has since resided.

In 1940, the appellant obtained a New York divorce from the respondent, upon substituted service, and upon allegations that he had absented himself from the state for more than five successive years preceding the presentation of her petition without being known to her to be alive, and that she believed him to be dead.

In 1949, the respondent returned to New York state for a few days, to attend the funeral of his son who had been killed in an accident while in military service overseas. Shortly after the funeral, he was served with a summons to appear and defend an action brought by the appellant, his former wife, to recover the amount which she alleged she had spent in rearing the youngest daughter of the parties. The respondent never appeared in the action, but returned

to Washington the day after the funeral, and a default judgment was entered against him in the supreme court of Schorarie county, New York, for the total sum of $7,579. The appellant brought suit on this judgment in the superior court for Kitsap county, where the respondent resides.

In his answer to the complaint, the respondent alleged that the New York judgment was obtained through fraud and cross-complained for one half the amount which he had expended in rearing the four older children, which amount he alleged to be greater than twice that of the appellant's judgment. The trial court found that the judgment had been fraudulently obtained and that the respondent had expended more than twice the amount thereof for the support of the four older children. Judgment was entered dismissing the complaint of the appellant.

The appellant claims that the court erred when it offset against her judgment a portion of the amount which the respondent had expended in rearing the four children, the portion being a sum equal to that of the New York judgment. She contends that, while a mother in a similar situation might recover contribution, the law affords to the father no corresponding right of action.

We have repeatedly held that, unless otherwise provided in the divorce decree, a mother who has had the custody of her minor children may recover from their father no more than one half of the amount that she has expended in maintaining them.

In *Ditmar v. Ditmar*, 27 Wash. 13, 67 Pac. 353 (1901), the mother obtained a divorce and was awarded custody of the children, the court having found that the father was unfit to have their care and custody. The property of the parties was divided, but no provision was made for support. The mother sued for the full amount expended by her in maintaining the minor children. She was given judgment for one half this amount, and the father was ordered to pay a certain sum per month for the future support of the children. On an appeal taken by the father, we upheld the trial court, saying:

"Clearly, the wife has every right, moral and equitable, to be reimbursed to the amount of a just proportion of the expense she has been put to in the performance of a duty which equally belonged to both; and the technical legal reason on which the contrary doctrine is based [that the father, having been deprived of custody, should not be required to support the children] ought not to be permitted to outweigh the evident justice of her claim."

In *Hector v. Hector*, 51 Wash. 434, 99 Pac. 13 (1909), as in *Ditmar v. Ditmar, supra,* the mother obtained a divorce on grounds of cruelty and was awarded custody of the child, but received no award for support. In her suit for support money, the trial court allowed her the full amount which she had expended, including attorney's fees. The court reversed and remanded the case, with instructions to the trial court to determine the amount expended by the mother for the care of the child, exclusive of attorney's fees, and to give judgment for one half that amount. In answer to the argument that a father is primarily responsible for the support of minor children and therefore should be required to reimburse the wife for the full amount expended, we said:

"So far as we have been able to discover, all the cases holding that the mother may recover from the father the entire expense of maintaining minor children are from jurisdictions where the father is primarily liable for such maintenance, either under the common law or by statutory enactment."

In construing what is now RCW 26.20.010 (Rem. Rev. Stat., § 6906), this court said:

"Bal. Code, § 4508 (P. C. § 3874), provides that 'The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately.' This obligation is the same after divorce as before, unless the decree of separation provides otherwise. It follows from this that the obligation of the father and mother in this state in relation to the maintenance and support of their minor children is joint and several, and not primary and secondary as at common law. And when the mother supports and maintains the children she is but performing an obligation which the law imposes jointly

upon her and the father, and we know of no principle of law that would permit her to recover the entire expense of such maintenance and support from her joint obligor.

. . .

"In actions of this kind, prosecuted after divorce and adjustment of property rights, the court does not possess that wide discretion which it may exercise in the divorce action. In adjusting the property rights of the parties to the divorce, the court may impose the entire obligation to support and maintain the minor children on either the father or the mother, but in a subsequent proceeding it can only enforce the obligations imposed by law. If the parties are both able to contribute to the support and maintenance of their children they must do so in equal parts. If both parties are not able, the party who has the ability must bear the entire burden as between the parents and the public. In considering the amount that should properly be allowed in such cases, the court should therefore consider the ability of the parents, the care and attention the mother must give the children, the assistance the mother will receive from the children, if any, and all the surrounding facts and circumstances, and equalize the burden between them as nearly as may be."

The principles laid down in these cases were applied again in *Schoennauer v. Schoennauer,* 77 Wash. 132, 137 Pac. 325 (1913), wherein the husband, alleging that he had been abandoned by his wife, obtained a decree of divorce in another state. The decree did not mention the minor child of the parties. The husband contended that the decree was an adjudication of the fact that his former wife abandoned him and was at fault; that she wrongfully retained custody of the child and was entitled to no recovery. In answer to this, we said:

"This contention is without merit and cannot be sustained. Whether it be assumed that appellant abandoned his wife, or that she abandoned him, the rights of their child would not be affected, nor would the appellant be relieved of the duties or obligations imposed upon him to contribute to its support."

That the duty of support rests upon both parents was again recognized in *State ex rel. Ranken v. Superior Court,* 6 Wn. (2d) 90, 106 P. (2d) 1082 (1940) and *Sanges v. Sanges,*

44 Wn. (2d) 35, 265 P. (2d) 278 (1953). We know of no case in our reports enunciating a contrary doctrine.

While none of these cases involves a suit by a father to obtain contribution, there is no distinction made between the right of the father and the right of the mother. On the other hand, it is recognized in each case that the parental responsibilities are equal.

While we might conceive of a situation in which a parent would be estopped to claim contribution, there is nothing in the record before us to justify the application of the doctrine of estoppel. The appellant did not contend or argue, either in the trial court or in this court, that she was wrongfully deprived of the custody of the children; nor is there anything in her deposition to indicate that she regretted not having the society of her children. The record reveals no clue as to why the parties separated. The appellant alleged in her complaint that she had been abandoned by the respondent; the respondent denied this and alleged that he had been abandoned by the appellant, which she in turn denied. No proof was offered in support of either allegation. In the absence of any adjudication on the question, we cannot speculate upon the reason why the parties separated. Under the holding in *Schoennauer v. Schoennauer, supra,* the fact of abandonment is immaterial; however, it is not necessary to adopt the extreme doctrine of that case in order to uphold the respondent's right to contribution since no abandonment was shown.

To hold that a father who has maintained and supported his children is not entitled to recover contribution from their mother would produce an anomalous situation in the law. Under our statutes, as interpreted in the cited cases, a mother would be required to contribute financially to the support of her children if she had them in her custody and, consequently, had the added responsibility of their care and supervision, but would be relieved of all duties if the father had custody of them. On the other hand, the father would be liable for only half of the children's support when they were in the custody of their mother, but

would be responsible for their entire support, as well as their care and supervision, when they were in his custody. Such an inequitable result could not reasonably have been intended by the legislature; and there is nothing in the language of the statute which compels us to conclude, or which even suggests, that this was the legislative intent. Moreover, under RCW (Sup. 1955) 26.20.030, either parent may be punished in a criminal action for desertion of, or for failure to support, his or her dependent children. Consequently, we hold that, where there is no provision in the divorce decree for support, the rights and responsibilities of the parents being equal, a father may recover contribution for the support of his minor children when he has had them in his custody while living separate and apart from their mother.

The appellant next argues that the respondent's counterclaim should have been interposed in the New York suit, and that the judgment obtained in that action is *res judicata* as to the claim. To determine whether the counterclaim could have been asserted in the New York action, we must look to the law of that state. Neither the statutes nor the common law of New York was pleaded, therefore we presume that the law of New York is the same as the law of Washington. *Norm Advertising v. Monroe Street Lbr. Co.*, 25 Wn. (2d) 391, 171 P. (2d) 177 (1946).

The appellant concedes that this is a proper counterclaim under RCW 4.32.090, .100 (Rem. Rev. Stat., §§ 273, 265). It is settled in this state that it is not necessary to interpose a counterclaim unless the proof which would establish that claim would defeat the plaintiff's cause of action. If the counterclaim is an independent cause of action, even though it is connected with the subject of the action and may properly be asserted, the defendant may elect not to plead it; and the judgment rendered in the cause will not bar a subsequent independent action based on the claim nor deprive the defendant of the right to rely thereon as a defense to, or as a counterclaim in, a subsequent action. The doctrine was first enunciated in this state in *Deaver v. Tra-*

*hey,* 98 Wash. 63, 167 Pac. 68 (1917), and was most recently stated in *Maxwell v. Provident Mut. Life Ins. Co.,* 180 Wash. 560, 41 P. (2d) 147 (1935). Both of these cases quoted with approval the following excerpt from 15 R. C. L. 972:

"The distinction between defenses which are lost if not set up by a defendant and those which need not be invoked by him depends on the closeness of the relationship between the plaintiff's cause of action and the defense. A fact which is impliedly or expressly involved in a judgment is considered merged therein so that it cannot be again litigated, but a separate cause of action will not necessarily be merged, and therefore need not be pleaded as a defense. While a judgment is decisive of the points raised by the pleadings, or which might properly be predicated upon them, it does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiffs might have joined, but which in fact are not joined or embraced in the pleadings. It is generally held that a set-off may or may not be pleaded, at the election of the defendant; and if not pleaded, the right to sue upon it as an independent cause of action, or to rely upon it in defense to another action by the same plaintiff, is not affected or impaired by a judgment against the defendant."

The appellant sued in the courts of New York for reimbursement for the expenditures she had made in behalf of the minor child who had been in her custody; no mention was made in the complaint of the other four children of the parties. Her right to recover for these expenditures was wholly independent of the respondent's right to recover contribution for the support of the children he had reared. The proof of either claim would not defeat the other but would serve merely as an offset. This being the case, the right to assert it was not foreclosed by the New York judgment.

Under the view we have taken, it becomes unnecessary to decide whether, as the appellant contends, the trial court erred in finding that the New York judgment was fraudulently procured. Since no affirmative judgment was given in behalf of the respondent, and he has not appealed, it is immaterial to him whether the New York judgment is declared void, by reason of fraud, or is offset by his counter-

claim. Either result will support the court's judgment of dismissal, and the respondent apparently is satisfied with the relief obtained.

The judgment is affirmed.

DONWORTH, C. J., MALLERY, SCHWELLENBACH, FINLEY, WEAVER, and OTT, JJ., concur.

HILL, J. (dissenting)—Whatever may be the Washington law as to a father's right of contribution against the mother for support and maintenance he has furnished to their children, it has never before been applied to such a state of facts as that presently before us. Here, a father who left his wife in New York, taking four of the five minor children with him to Michigan and later bringing one of them to Washington, and concealing his and their whereabouts from her during the entire period that he furnished maintenance and support for them, is held to have a right to contribution from her for half of that maintenance and support. There is no other case anywhere so holding.

The majority is concerned about its inability to determine who abandoned whom in the state of New York. There is, however, no doubt as to who left the community where the family resided. There is no doubt as to who spirited away four of the children from that community. There is no doubt as to who concealed his own and the children's whereabouts during all of the years that he supported and maintained them. And those undisputed facts are sufficient, in my opinion, to provide the answer to the question of the father's right to contribution for the support of those children. (I place no emphasis upon the fact that the husband left New York with the woman who was or who thereupon became his paramour, except as it bears upon the issue of abandonment.)

The rule should be, and I believe is, that, as between a father and a mother, either parent's obligation to contribute to the support and maintenance furnished by the other to their child or children is suspended during such time as the parent from whom contribution is sought is *wrongfully* deprived of the custody of the child or children in question, or

during any period that the children's whereabouts are *wrongfully* concealed. Such a holding finds adequate support in the cases. *White v. White* (1951), 138 Conn. 1, 81 A. (2d) 450—husband held not liable for expenditures made by wife for support and maintenance of child during period that he was wrongfully deprived of custody, even though he knew where the child was; *In re Sheldon* (1936), 248 App. Div. 423, 290 N. Y. S. 80—same situation as in *White v. White, supra.* Such cases are necessarily limited in number, because few women have the effrontery to take their children and wrongfully conceal their whereabouts from the father and then ask contribution for their support and maintenance. The instant case, where the father took the children and wrongfully concealed their whereabouts from the mother and now asks contribution from her for their support and maintenance during the period of such concealment, is *sui generis.*

Since I conclude that the husband's right to contribution is nonexistent in this case, it becomes necessary to consider his other defense, *i.e.*, that the New York judgment was fraudulently procured as to him.

While temporarily in the state of New York, the former husband was served in a suit commenced in that state by his former wife to recover money she had spent in rearing the youngest child of the parties, the only one of the five children he left behind him when he left the state. Within a day or two after the service on him, he returned to the state of Washington, but with the understanding that his brother in New York would see his former wife and tell her that the summons had been served upon him, the brother. This the brother did, and at that time she conceded that, if the papers had been served on the brother as he claimed, she could not prosecute the action against her former husband. The evidence does not support the finding of the trial court that she promised not to prosecute the action if service had been obtained upon her former husband. She did proceed with the action, taking a default and securing a judgment in the amount of $7,579. The claim that the New York judgment

was procured by fraud has not even a shadow of substance.

The former wife, appellant here, was entitled to maintain an action in Kitsap county on the New York judgment. As the former husband, respondent here, has no real defense and no legitimate counterclaim or offset, the judgment of the trial court in his favor should be reversed, with instructions to enter judgment for the appellant for the amount of her judgment, together with interest and costs.