[No. 23393-6-III.   Division Three.   January 12, 2006.]

*In the Matter of the Parentage of* I.A.D.

THE STATE OF WASHINGTON, *on the Relation of I.A.D.,*
*Appellant,* v. SHILOH A. BASE, *Respondent.*

208

*Christopher M. Constantine*, for appellant.

*James L. Nagle, Prosecuting Attorney*, and *June I. Tomioka, Deputy*, for respondent.

¶1 THOMPSON, J.[*]— The State brought a parentage action on behalf of I.A.D. against Shiloh Base for a determination of paternity and for reimbursement of back child support. Mr. Base was adjudicated to be the father of I.A.D. He was ordered to pay current and future child support for I.A.D. The State also received a judgment against Mr. Base to reimburse public assistance paid on behalf of the child. Although the State paid public assistance to I.A.D. throughout his life, the court limited the liability for reimbursement to the period of November 1, 2003 to July 31, 2004, rather than the term of five years authorized by statute. The State was also limited to $50 per month in collecting the back child support in order to reimburse the public assistance received by I.A.D. The State challenges the limitation on the period and collection of back child support based on the claim that (1) the trial court erroneously applied RCW 26.26.130(3) in setting liability, (2) the court erred in considering the State's delay in bringing the parentage action and Mr. Base's lack of knowledge that I.A.D. existed, and (3) the court lacked the authority to

---

[*] Judge Philip J. Thompson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

limit the statutory collection remedies that the State could pursue in collecting its judgment.

¶2 We hold that the trial court committed no error when it determined that it had discretion to limit the term of back child support owed by Mr. Base and did not abuse its discretion when it limited the term of back child support to one year based on equitable considerations. We further hold that the trial court erred when it limited the remedies available to the State for collection of the State's judgment against Mr. Base. Therefore, we reverse and remand this case so that the trial court may reinstate the language in the judgment and order reserving the State's right to pursue all available legal remedies for collection of its judgment.

## FACTS

¶3 Lauren Davin and Shiloh Base had sexual intercourse on one occasion, and I.A.D. was born as a result. Because Ms. Davin had substance abuse problems, I.A.D. resided for almost his entire life with his maternal grandmother and stepgrandfather, Jackie and Ralph Jacobson. The Jacobsons have been responsible for I.A.D.'s care and support.

¶4 In August 2003, Mr. Base's ex-wife called him and told him that she saw a young boy who looked just like Mr. Base. His ex-wife informed Mr. Base that Ms. Davin was the child's mother, and that Mr. Base could be the father of this child. However, because Ms. Davin never contacted him about any pregnancy or the birth of any child, Mr. Base disregarded his ex-wife's statements. Mr. Base received a summons and petition for the establishment of parentage of I.A.D. in November 2003.

¶5 The State paid public assistance to the Jacobsons and to Ms. Davin from I.A.D.'s birth until the State initiated the parentage action. Mr. Base was adjudicated to be the father of I.A.D. As part of the trial court's judgment and order determining parentage and granting additional relief, the

court entered findings of fact and conclusions of law. The court ruled that back child support for reimbursement of the State's public assistance was not mandatory based on the language in RCW 26.26.130(3). Therefore, a judgment of back support for the full term of five years as authorized by RCW 26.26.134 was not required. The court also found that Mr. Base had no knowledge of his son until the action to determine paternity was commenced by the State.

¶6 In setting the amount of Mr. Base's liability to the State for back support, the court referenced Mr. Base's ignorance that I.A.D. existed and the failure of either the State or Ms. Davin to take action to establish paternity and financial responsibility at an earlier time. For these reasons, the trial court limited Mr. Base's liability for child support to the period of November 2003 through July 2004. This is the period from when the State served its summons and petition for the establishment of parentage until the court entered its judgment determining parentage and granting additional relief.

¶7 Mr. Base was ordered to pay the State the amount of $50 per month in addition to his current child support obligation. The court also struck an additional provision from the draft judgment submitted by the State that would have allowed the State to pursue additional collection remedies through garnishing Mr. Base's income tax returns. This left the State with the exclusive collection remedy of the $50 payments per month.

## ANALYSIS

### I. *STATUTORY INTERPRETATION OF THE UNIFORM PARENTAGE ACT*

¶8 ■ The State contends that the trial court erroneously applied RCW 26.26.130(3) in shortening the period of time for which Mr. Base would be liable for back child support. In making this claim, the State asks this court to interpret the statutory provisions of RCW 26.26.130(3) and (5), which are a part of the Uniform Parentage Act, chapter

26.26 RCW. Because this is an issue of statutory construction, which is a question of law, we review the claim de novo. *United States v. Hoffman*, 154 Wn.2d 730, 737, 116 P.3d 999 (2005).

## A. *Principles of Statutory Construction*

¶9 ■ "Statutory construction begins by reading the text of the statute or statutes involved." *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005). If the language is unambiguous, the inquiry ends with the plain language, and we assume the statute means exactly what it says. *State v. Salavea*, 151 Wn.2d 133, 142, 86 P.3d 125 (2004). "Where statutory language is amenable to more than one reasonable interpretation, it is deemed to be ambiguous." *Roggenkamp*, 153 Wn.2d at 621. However, a statute is not ambiguous simply because different interpretations are conceivable. *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239-40, 59 P.3d 655 (2002). Legislative history, principles of statutory construction, and relevant case law may provide guidance in construing the meaning of an ambiguous statute. *State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002).

¶10 In interpreting statutory terms, a court should take into consideration the meaning naturally attaching to them and that best harmonizes with the context of the rest of the statute. *Roggenkamp*, 153 Wn.2d at 623. Statutes relating to the same subject matter are to be construed and read together as a unified whole in ascertaining a legislative purpose so that a harmonious total statutory scheme emerges. *In re Estate of Black*, 153 Wn.2d 152, 164, 102 P.3d 796 (2004). "[A]pparently conflicting statutes must be reconciled to give effect to each of them." *Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000).

¶11 "A legislative body is presumed not to use nonessential words." *State v. Beaver*, 148 Wn.2d 338, 343, 60 P.3d 586 (2002). Therefore, each word of the statute must be accorded meaning and interpreted so that no portion of the

statute is rendered meaningless or superfluous. *Roggenkamp*, 153 Wn.2d at 624.

## B. Uniform Parentage Act

¶12 ■ ■ In Washington, both biological parents have an obligation to support their children regardless of marital status. *See, e.g.*, *Linda D. v. Fritz C.*, 38 Wn. App. 288, 300, 687 P.2d 223 (1984). Parentage actions to secure support for children are authorized under the Uniform Parentage Act. These actions may be, and commonly are, commenced by the State to enforce a father's support obligations in order to reduce the amount of public assistance paid to the mother and child. *See, e.g.*, RCW 26.26.150; RCW 74-.20A.030(1); RCW 74.20.330; *State ex rel. O'Brien v. Cooperrider*, 76 Wn. App. 699, 887 P.2d 408 (1994).

¶13 ■ ■ RCW 26.26.130 empowers courts to enter a judgment and order determining whether a parent-child relationship exists and to enter appropriate provisions for support of the child. If the issue of liability for past support is before the court, it is required to determine the extent of that liability. RCW 26.26.130(3). The pertinent text of RCW 26.26.130(3) reads:

> The judgment and order shall contain other appropriate provisions directed to the appropriate parties to the proceeding, concerning . . . the extent of any liability for past support furnished to the child if that issue is before the court . . . .

However, under RCW 26.26.130(5), the court is prohibited from limiting or affecting the right of nonparties, including the State, to seek reimbursement for support and services provided to the child. This provision reads:

> The court shall not limit or affect in any manner the right of nonparties including the state of Washington to seek reimbursement for support and other services previously furnished to the child.

RCW 26.26.130(5).

¶14 Here, the State urges this court to interpret RCW 26-.26.130(5) as conferring an absolute right on the State to

reimbursement up to the full term of five years authorized by RCW 26.26.134. The State asserts that, by reducing Mr. Base's liability for back child support to one year, rather than the full five years authorized, the trial court limited its right to seek reimbursement.

¶15 There are several problems with the State's interpretation of RCW 26.26.130(5) as conferring an absolute right to the full term of reimbursement. First, the State's interpretation ignores that RCW 26.26.130(5) applies only when the State is a nonparty to the parentage action.

¶16 In Washington, both parents and the State have standing to seek a declaration of paternity or parentage. RCW 26.26.505; RCW 74.20A.030. However, regardless of who brings the action to determine parentage, the State has an independent right to reimbursement. RCW 74.20.330; RCW 74.20A.030. The apparent conflict between RCW 26-.26.130(3) and (5) disappears given the language limiting (5) to cases where the State is not a party to the action.

¶17 Because the parent may bring the support action to collect back child support, RCW 26.26.130(5) should be read as preserving the State's right to reimbursement in those cases where the State is not the party bringing the paternity action. This is also consistent with other provisions in the Uniform Parentage Act that assert that the right of the State to collect back child support does not merge with, and is not extinguished by, an action brought by the parent. *See, e.g.,* RCW 26.26.590(11).

¶18 Moreover, the language of RCW 26.26.130(5) only prohibits a trial court from infringing on the right of the State or other nonparty *to seek* reimbursement. On its face, this may be simply a prohibition against the trial court refusing to consider the State's arguments for reimbursement after one of the parents has brought a parentage action based on a lack of standing. This language does not, on its face, confer an absolute right to the reimbursement.

## C. Trial Court's Limitation on Period of Reimbursement

¶19 ■ The primary issue in this case is whether the trial court acted within its authority when it relied on the equitable considerations to limit Mr. Base's liability for back child support. Put another way, the issue is whether the court has the express power under RCW 26.26.130(3), or the inherent equitable power, to limit liability for back child support based on equitable considerations.

¶20 RCW 26.26.130(3) allows the court to determine the extent of liability when back child support is at issue in a parentage case. The language of this statute appears to confer upon the court some discretion in establishing the scope of that liability. The State concedes in its brief that the trial court had discretion to reduce the dollar amount of the back child support Mr. Base owed the State. However, the State claims that the trial court lacked the authority to limit the period of time during which Mr. Base could be held liable. This appears to be a distinction without a difference.

¶21 The language of RCW 26.26.130(3) allows the court to limit the extent of liability, which seems to include both the amount and the term of liability. Because the court must determine the extent to hold the parent responsible for back child support, RCW 26.26.130(3) implies that courts have discretion in types of considerations and limits on liability that the trial court can permissibly make.

¶22 The court's power to apply equity in limiting back child support is also supported by case law. In Washington, courts are allowed in some contexts to apply traditionally recognized equitable principles to mitigate the harshness of claims for back support. *In re Marriage of Shoemaker*, 128 Wn.2d 116, 123, 904 P.2d 1150 (1995). The court exercised this power when it ruled that Mr. Base's legal responsibility came into being once he knew of I.A.D.'s existence through the parentage action brought by the State.

¶23 Read together, the plain language of RCW 26-.26.130(3) and (5) directs that the trial court may not prevent the State from petitioning for back child support to

reimburse public assistance paid on behalf of the child even if another action has been brought by the parent. Upon hearing and considering any request for back child support, the trial court retains the discretion to determine the extent to which to hold the father legally responsible. This discretion is granted both in the explicit language in RCW 26-.26.130(3) and in the implicit power of the court to apply equity. Therefore, the trial court did not err when it ruled that it had the discretion under RCW 26.26.130(3) to limit the period of back child support owed in this case.

## II. *EXERCISE OF DISCRETION IN LIMITING THE PERIOD OF BACK CHILD SUPPORT*

¶24 The State next contends that, even if the trial court had the discretion to limit the term of back child support owed, the trial court abused that discretion in limiting the period of child support owed by Mr. Base to only one year based on the failure of the State to take timely action in seeking back child support and Mr. Base's lack of knowledge about his son.

¶25 ▪ A cause of action to reimburse a custodial parent for monies actually expended lies with the custodial parent and not the child. *Hartman v. Smith*, 100 Wn.2d 766, 768, 674 P.2d 176 (1984). Under RCW 74.20A.030, if public assistance is paid for the care and maintenance of a child, the State may step in to pursue a support action to obtain reimbursement of the moneys expended. This process through which the State is allowed to stand in the shoes of the custodial parent and maintain a child support action for back support is known as "subrogation." *See, e.g., Moore v. Moore*, 20 Wn. App. 909, 911, 583 P.2d 1249 (1978).

¶26 Subrogation is the substitution of one party for another whose debt the party pays. The substituted party is then entitled to all of the rights, remedies, or securities that otherwise would belong to the debtor. *See* BLACK'S LAW DICTIONARY 1467 (8th ed. 2004). The purpose of allowing the State to bring a child support action is to augment remedies to enforce parents' obligations to support their children.

*Moore*, 20 Wn. App. at 913. However, given that the State is standing in the shoes of the custodial parent in bringing a subrogation action for child support, it stands to reason that the rights and remedies available to the State are no greater than those that would be available to the parent. *See, e.g., Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 341, 831 P.2d 724 (1992).

¶27 ■ "The court has discretion to mitigate the harshness of a claim for back support." *In re Parentage of Hilborn*, 114 Wn. App. 275, 278, 58 P.3d 905 (2002). Courts have applied equitable principles to some claims for retrospective support when doing so did not work an injustice to either the custodial parent or to the child. *Shoemaker*, 128 Wn.2d at 123; *Hartman*, 100 Wn.2d at 768-69. However, the trial court's power can only be exercised within the framework of established equitable principles, such as equitable defenses that have traditionally been recognized in the context of child support proceedings. *Shoemaker*, 128 Wn.2d at 123. Among such defenses are equitable credit, equitable estoppel, and laches. *Id.*

¶28 ■ While the defense of laches is inapplicable to an action to determine paternity, case law indicates that it may provide a proper defense to the State's claim for reimbursement. *State ex rel. Coyle-Reite v. Reite*, 46 Wn. App. 7, 12, 728 P.2d 625 (1986). Laches bars a cause of action for back child support if: (1) the plaintiff was aware or should have been aware of the facts constituting the cause of action, (2) the commencement of the action was unreasonably delayed, and (3) the defendant is damaged by the delay. *Hilborn*, 114 Wn. App. at 278.

¶29 ■ A trial court's decision to award child support is reviewed for abuse of discretion. *In re Marriage of Pollard*, 99 Wn. App. 48, 52, 991 P.2d 1201 (2000). The party who challenges such decisions must show that the trial court manifestly abused its discretion. *In re Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). A trial court abuses its discretion if its decision is manifestly unreason-

able or based on untenable grounds or untenable reasons. *Drury v. Tabares*, 97 Wn. App. 860, 863, 987 P.2d 659 (1999).

¶30 Here, the trial court implicitly exercised its discretion to limit the term of Mr. Base's liability based in part on the doctrine of laches. Although the trial court never explicitly referenced the doctrine of laches by name, the doctrine seems to be clearly contemplated in the court's reasoning. The court found that the State had, "[sat] on its hands for four or five years . . . and then [came] in and ask[ed] for reimbursement. If you are going to pay, and want reimbursement, you have to let people know so they can plan accordingly." Report of Proceedings at 39.

¶31 The court found that the amount of arrearages that would be imposed on Mr. Base as a result of the State not pursuing its parentage action in a timely manner would be patently unfair. The court also considered the fact that Mr. Base had no knowledge that I.A.D. existed and, therefore, could not take action at an earlier period of time to provide support for his child and thus reduce the amount of his arrearage. This weighing of factors and the decision to limit Mr. Base's liability is not manifestly unreasonable or based on untenable grounds or reasons. Therefore, the trial court did not abuse its discretion when it applied equitable principles to limit Mr. Base's liability for back child support.

III. *LIMITATION ON COLLECTION REMEDIES OF THE STATE*

¶32 ██ ██ The right to pursue statutory provisional remedies in an attempt to collect a judgment is inherent in every judgment. *Starkey v. Starkey*, 40 Wn.2d 307, 316, 242 P.2d 1048 (1952). Any established arrearage in support payments becomes a vested judgment that a party can seek to recover by any lawful means. *In re Marriage of Drlik*, 121 Wn. App. 269, 279, 87 P.3d 1192 (2004). "A court may not modify or condition collection." *In re Marriage of Chapman*, 34 Wn. App. 216, 221, 660 P.2d 326 (1983). A trial court may not, by its judgment, restrain a party from enforcing its collection of arrearages by the legal remedies available to it.

*See, e.g., Lambert v. Lambert*, 66 Wn.2d 503, 510, 403 P.2d 664 (1965).

¶33 In this case, the State's proposed judgment and order contained a statement reserving the State's rights to pursue all other collection remedies available to it by law. Among the remedies that the State specifically reserved was the right to collect from Mr. Base's tax returns. The trial court improperly struck this provision from the order.

## IV. *ATTORNEY FEES*

¶34 ■■■ Mr. Base requests attorney fees pursuant to RCW 26.26.140. However, this section directs that attorney fees assessed against the State are governed by RCW 4-.84.185, and this section provides that such fees are only available if the action or defense was frivolous and advanced without reasonable cause. The State was not frivolous in bringing this appeal. Therefore, we decline to assess attorney fees against the State.

¶35 We affirm the trial court's limitation of back child support owed by Mr. Base to the period of one year. We reverse and remand this case to the trial court to reinstate the language in the judgment reserving the right of the State to exercise all other collection remedies that are available at law.

KATO, C.J., and SCHULTHEIS, J., concur.

Reconsideration denied March 2, 2006.